# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GARNICAS TRANSPORT, LLC and
SAMUEL GAMERO,

        Plaintiffs,

  v.

COMMERCIAL ALLIANCE INSURANCE
COMPANY,

        Defendant.
_____/

COMMERCIAL ALLIANCE INSURANCE
COMPANY,

        Counterclaimant,

  v.

GARNICAS TRANSPORT, LLC and
SAMUEL GAMERO,

        Counter-defendants.
_____/

Case No. 1:21-cv-01018-SKO

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

    This case concerns an insurance coverage dispute between Plaintiffs/Counter-defendants Garnicas Transport, LLC ("Garnicas") and its principal Samuel Gamero ("Gamero") (collectively, "Plaintiffs") and Defendant/Counterclaimant Commercial Alliance Insurance Company ("CAIC"). Plaintiffs allege that that CAIC breached its commercial auto liability policy by denying coverage to a fatality claim. CAIC claims it is entitled to reimbursement from Plaintiffs of a surety bond payment it paid to settle the wrongful death and workers' compensation suits arising from that fatality claim.

A bench trial in this case was held on April 26, 2023.[1] (Doc. 45.) At trial, the Court heard from two witnesses and admitted nine exhibits into evidence. (Doc. 47.) Plaintiff Gamero and Manuel Gardea, Jr., CAIC's Director of Claims, were sworn and testified at trial. Following the bench trial, the Court directed the parties to submit proposed findings of fact and conclusions of law, which the parties filed on July 24, 2023. (Docs. 48 & 49.)

Having considered the testimonial evidence and exhibits admitted at trial, the parties' arguments, and the applicable law, the Court sets forth the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## I. FINDINGS OF FACT

### A. The Parties

Garnicas is a trucking company that hauls Tesla products from Mexico into the United States. (Doc. 33 at 2; Doc. 24 at 2; Doc. 37 at 1; Doc. 42 at 1; Doc. 48 at 1–2; Doc. 49 at 2.) Gamero is an owner of Garnicas. (Doc. 47 at 51:7–8.)

CAIC is an insurance company that insures cross-border operations of trucking companies. (Doc. 33 at 2; Doc. 24 at 2; Doc. 37 at 1; Doc. 42 at 1; Doc. 48 at 1–2; Doc. 49 at 2.) While there are hundreds of insurance companies that offer commercial automobile insurance, there are three competitors in this "niche market" in which CAIC operates. (Doc. 47 at 100:15–101:13.)

### B. The Broker

To assist him in procuring commercial automotive insurance for Garnicas' fleet of trucks, Gamero hired a third-party broker, Morris Seguros. (Doc. 47 at 57:24–58:4.) Gamero first learned of CAIC through Morris Seguros. (*Id*. at 57:14–18.) Morris Seguros is not employed by CAIC. (*Id*. at 108:14–15.)

CAIC did not have any direct negotiations with Garnicas regarding their coverage, nor did CAIC make any representations to Garnicas regarding what would or would not be covered. (Doc. 47 at 60:9–10; 109:3–9.) All communications regarding Garnicas' insurance needs were made with and through Morris Seguros. (*Id.* at 60:5–10; 109:10–12.)

---

[1] The parties consented to the jurisdiction of the magistrate for all purposes, including trial and entry of Judgment. (Doc. 11.)

The person with whom Gamero communicated at Morris Seguros is Claudia Ponce. (Doc. 47 at 26:17–27:23, 58:5–7; 124:15–17.) Ms. Ponce is an "independent broker" who represents many insurance companies (Doc. 47 at 108:20–22; 123:25–124:4; 125:3–7.) She does not receive any financial incentive to steer business to CAIC. (*Id.* at 108:20–22.) She is employed by Morris Seguros, and is not an employee of CAIC. (*Id.* at 108:16–19.)

**C.     The Policy**

The relevant policy, policy no. NHC0000843 (the "Policy"), was issued by CAIC to Garnicas through Morris Seguros for the explicit purpose of providing coverage for Garnicas' trucks when, and only when, they make a trip from Mexico into the United States. (Doc. 33 at 2; Doc. 24 at 2; Doc. 37 at 1–2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 2. *See also* Ex. J-1.)

1.     <u>Radius of Operation Limitation</u>

To provide a quote for insurance, CAIC needs the year, make and model of the vehicle; the type of cargo; the radius of operation mileage; and the value of the vehicle. (Doc. 47 at 105:16–107:1.) All of these factors influence what the premium for a policy will be. (*Id.* at 106:24–107:1.)

CAIC offers range of radius of operation mileage options, from 50 maximum miles to "all US miles." (Doc. 47 at 107:10–17.) The smaller the radius of operation mileage, the less expensive the policy will be. (*Id.* at 107:2–9.) A customer can change the radius of operation mileage "from day to day if they would like," by calling their broker and making that request. (*Id.* at 107:21–108:4.)

Gamero had to select a radius of operation mileage for each truck in his fleet he wished to insure. (Doc. 47 at 72:25–76.2.) He understood that there would be a difference in price of the insurance depending on the radius selected. (*Id.* at 63:11–17.)

Each truck listed on the Policy is registered by the insured with a specific radius of operation mileage, which means that the Policy provides coverage from the port of entry into the United States up to the number of miles selected by the customer under the "Radius of Operation" of the Policy. (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 2. *See also* Ex. J-1 at 1, 15.) The "Radius of Operation" appears first in the declarations page of the Policy, which is the summary or overview of the policy terms. (Doc. 47 at 102:7–24, 103:11–15; 103:19–104:5; Ex.

3

J-1 at 1.) It also appears on a separate page within the policy, with a header reading "LIMITED RADIUS OF OPERATION ENDORSEMENT" in big, bold, blue typeface. (Ex. J-1 at 15; Doc. 47 at 104:6–105:3.) The purpose of the header is to make the "Radius of Operation" endorsement "sort of open and obvious" within the Policy. (Doc. 47 at 104:20–105:11.)

Garnicas owns a 2010 Volvo truck with Vehicle Identification Number ("VIN") 4V4NC9TG5AN288388. (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 2.) Gamero wanted to use that truck as an extra or "backup" truck, in case of emergency, e.g., "one of the other trucks breaks." (Doc. 47 at 33:16–18; 34:2–3.) Prior to owning Garnicas, Gamero worked with a trucking company named Transwest in Fresno, California, who informed him that, in a fleet of more than five trucks, he was required to have an extra truck insured in case of a breakdown. (*Id.* at 51:15–21.) CAIC never informed Gamero that he was required to insure an extra truck; rather, it was a "business decision" to make sure he "had an extra truck on hand in case" he needed it. (*Id.* at 51:22–52:5.)

On November 28, 2018, Gamero engaged in email communications with Ms. Ponce regarding insurance for the subject truck in Spanish. (Doc. 47 at 28:9–30:12; Ex. J-2.) Gamero sent Ms. Ponce a copy of the California DMV registration and told her that he wanted to "insure it as an extra in case of emergency, please." (Ex. J-2 at 2–4; Doc. 47 at 34:23–35:16; 64:3–66:16.) Ms. Ponce responded that she did not understand what Gamero meant by "extra," and that if he wanted the truck insured, he needed to provide the truck number, "how many miles," and the value of any physical damage coverage. (Ex. J-2 at 2; Doc. 47 at 31:17–22; 35:17–25; 67:2–7.) Gamero responded: "Truck No. Gs15," "300 miles," and $10,000 coverage for repairs. (Doc. 47 at 67:16–24; Ex. J-2 at 2.) Ms. Ponce then asked Gamero to "please confirm" whether to apply a "250 or 500" radius to the policy, to which he replied "250." (Doc. 47 at 67:25–68:6.)

Gamero did not inform Ms. Ponce that he needed enough coverage on the "backup" truck so that if it replaced another truck with a 1,000-mile radius of operation, the backup truck would be covered. (Doc. 47 at 46:9–15; 47:10–21.) He understood that the "250" referred to miles for the "Radius of Operation" for that truck, and that the truck was only going to be insured for the radius selected. (*Id.* at 69:7–10; 70:22–24.) He also understood that depending on how many miles

4

selected, it would affect the price of the truck's insurance.  (*Id*. at 63:18–22.)  Gamero and Ms. Ponce did not discuss how much CAIC would charge to increase the radius of operation mileage for the subject truck from 250 to 1,000 miles.  (*Id*. at 47:22–48:2.)

In March 2019, Ms. Ponce emailed Gamero to inform him that his insurance was going to expire and that he needed to renew for the next calendar year.  (Doc. 47 at 71:5–25; Ex. J-2 at 9–12.)  She attached to her email a list of Garnicas' entire fleet and the status of coverage, including each trucks' "Radius of Operation" mileage.  (Doc. 47 at 72:1–24; Ex. J-2 at 10–12.)  The subject truck's mileage was listed as 250.  (Doc. 47 at 73:7–12; Ex. J-2 at 10.)  Ms. Ponce asked Gamero to review the list prior to renewal on April 4, 2019, which he did.  (Doc. 47 at 75:18–76:1; Ex. J-2 at 10.)

Effective April 16, 2019, Garnicas, through its owner Gamero, registered the subject truck under the Policy and with a radius of 0–250 miles.  (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 2.  *See also* Ex. J-1 at 1.)  Garnicas' selection of the 250-mile radius is confirmed via email correspondence between Ms. Ponce and Gamero, described above.  (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 2–3.  *See also* Ex. J-2.)

### 2. U.S. Registration Exclusion

The Policy also contains an exclusion for "Any auto registered or principally garaged in the United States of America or Canada."  (Doc. 33 at 3; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 3.  *See also* Ex. J-1 at 23.)  The subject truck was registered in the United States.  (Doc. 37 at 2; Doc. 42 at 1; Doc. 47 at 64:25–66:2; 80:6–8; 121:5–14.  *See also* Ex. J-7.)  This exclusion would exclude coverage for the underlying accident under the Policy.  (Doc. 33 at 3; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 3; Doc. 49 at 3.)

### 3. Form MCS-90 Endorsement

Finally, the Policy contained a Form MCS-90 Endorsement ("MCS-90") pursuant to the Motor Carrier Act of 1980.  (Doc. 33 at 3; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 3; Doc. 49 at 3.  *See also* Ex. J-1 at 3.)  The MCS-90 does not provide insurance coverage.  (Doc. 33 at 3; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 3; Doc. 49 at 3.)  Rather, it acts as a surety bond up to $750,000 for any judgment for which the insured becomes liable but is unable to satisfy.

(*Id. See also* Ex. J-1 at 3.)

The insured remains primarily responsible for any such judgments. (Doc. 33 at 3; Doc. 24 at 3; Doc. 37 at 2–3; Doc. 42 at 1; Doc. 48 at 3; Doc. 49 at 3.) As such, the insurer holds an absolute right of reimbursement against the insured for any sums paid pursuant to the MCS-90, whether as a result of a judgment or a settlement. (Doc. 33 at 3; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 3.) Additionally, the MCS-90 does not create any duty to defend the insured against third party claims. (*Id*.)

**D.     The Accident**

Shortly before July 3, 2019, the subject truck began a trip from Mexico into the United States. (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 3.) On July 3, 2019, the subject truck was involved in a fatality accident in or near Tonopah, Nevada. (*Id*.) The decedent, Dario Baez ("Baez"), was operating a commercial vehicle on behalf of his employer Panella Trucking. (Doc. 35 at 2; Ex. J-4 at 1; Ex. J-5.) The location where the accident occurred was more than 250 miles from its port of entry into the United States. (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 3.)

**E.     Denial of the Claim**

Shortly after the accident, Garnicas submitted a claim to CAIC. (Doc. 33 at 3; Doc. 24 at 4; Doc. 37 at 3; Doc. 42 at 1; Doc. 48 at 3; Doc. 49 at 4.) Upon receipt of the claim, CAIC identified a "potential issue" with coverage due to the radius of operation mileage, and "reassigned the file to be handled by a third-party administrator" so that it could be "looked at objectively by somebody else to represent the insured." (Doc. 47 at 110:4–10.) The purpose of hiring a third-party administrator is to ensure objectivity in the coverage investigation. (*Id*. at 111:3–8; 112:1–4.) CAIC hired third-party administrator Custard Insurance Adjusters ("Custard"), who hired their own counsel to assist in the investigation. (*Id*. at 111:9–16.) CAIC also hired "coverage counsel to look into possible coverage for the radius of operation." (*Id*. at 112:5–13.)

    1.     <u>Reservation of Rights Letter</u>

On July 19, 2019, Custard sent a letter to Garnicas notifying it that it was "continuing to investigate the claim under a Reservation of Rights," and that CAIC "reserve[d] the right to deny

coverage should it be determined that there is no coverage under the policy." (Ex. J-8 at 1. *See also* Doc. 47 at 113:19–14.)  The letter identified the "Limited Radius of Operation Endorsement" as a "potential problem for coverage," and quoted the provision. (Ex. J-8 at 5–6; Doc. 47 at 114:15–15.) The letter did not identify the Policy's U.S. registration exclusion as a potential coverage issue. (*See* Ex. J-8 at 1–7.)

The letter stated that CAIC "will continue to investigate this matter under a reservation of rights," and that the "investigation of this claim [] is not to be construed as a waiver of any term or condition of the policy of any of the rights of [CAIC] there under." (Ex. J-8 at 6. *See also* Doc. 47 at 115:19–116:16.)  It further stated that "the above cited policy language is not intended to be all inclusive," and

> We reserve the right to assert any other policy defenses which may now exist or which may come into existence at a later time.  Our failure to raise any existing policy defenses at this time, if any, may not be considered a waiver of any of those rights.

(*Id*.)

2. Denial Letter

On September 30, 2019, Custard sent a letter to Garnicas indicating CAIC was denying coverage for the claim. (Doc. 33 at 3; Doc. 24 at 4; Doc. 37 at 3; Doc. 42 at 1; Doc. 48 at 3; Doc. 49 at 4; Ex. J-8 at 8–15.)  The basis for the denial was because the loss "occurred outside of the 250 mile radius" it did "not fall within the radius listed on the policy." (Ex. J-8 at 1, 15. *See also* Doc. 47 at 116:17–117:1.)  The parties do not dispute that there was no coverage for the accident pursuant to the Limited Radius of Operation Endorsement to the Policy. (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 3.)

The letter did not identify the Policy's U.S. registration exclusion as a basis for denial of the claim. (*See* Ex. J-8 at 8–15.)  Like the July 19 letter, the letter reiterated that "the above cited policy language is not intended to be all inclusive," CAIC "reserve[s] the right to assert any other policy defenses which may now exist or which may come into existence at a later time," and that its "failure to raise any existing policy defenses at this time, if any, may not be considered a waiver of any of those rights." (*Id*. at 15.)

**F.      Amendment to the Policy**

On August 16, 2019, in response to the accident, Gamero contacted Ms. Ponce to increase the radius of operation for all of Garnicas' trucks to a minimum of 1,000 miles, including the subject truck. (Doc. 47 at 76:5–77:7; Ex. J-2 at 5–6.) Gamero had a "misunderstanding" that the subject truck, as a "backup" or "extra," would require "different or lesser insurance than the other truck." (Doc. 47 at 45:22–46:3; 52:6–13; 70:12–15.)

The amendment to the Policy, effective August 26, 2019, shows Garnicas paid an additional $2,001.86 in additional premium for the subject truck, of which an additional $164.15 was liability coverage for up to $1 million. (Doc. 47 at 89:6–92:7; 142:9–143:19. *See also* Ex. J-9.) There are "a lot of factors that go into calculating [a] total premium, which include cargo, physical damage, medical payments, [and] automobile liability." (Doc. 47 at 147:22–148:1.) Specifically, as to liability coverage, the radius of operation mileage is "one of many factors that might go into the calculation of that line item premium." (*Id*. at 148:2–10.)

**G.      Payment of the Surety Bond**

In 2021, the family of decedent Baez and his employer's Panella Trucking's workers compensation insurer, Insurance Company of the West, filed separate lawsuits against Garnicas. (Doc. 33 at 3; Doc. 24 at 4; Doc. 37 at 3; Doc. 42 at 1; Doc. 48 at 4; Doc. 49 at 4. *See also* Exs. J-2 & J-3.) CAIC did not owe Garnicas any duty to defend against the lawsuits filed by the Baez family or Insurance Company of the West. (Doc. 33 at 3; Doc. 24 at 4; Doc. 37 at 3; Doc. 42 at 1; Doc. 48 at 4; Doc. 49 at 5.) CAIC nonetheless reached out to the Baez family and Insurance Company of the West, with Garnicas' knowledge and consent, to help facilitate an early resolution of those claims. (*Id*.) CAIC agreed to pay its $750,000 surety obligation under the MCS-90 to the Baez family and Insurance Company of the West in exchange for dismissals with prejudice of the lawsuits and a full release of all claims as against Garnicas and all affiliated entities. (*Id*.) CAIC explicitly gave Garnicas advance notice of its intent to settle the underlying claims and of its reservation of its absolute right of reimbursement back against Garnicas for any sums it paid. (Doc. 33 at 3; Doc. 24 at 4; Doc. 37 at 3–4; Doc. 42 at 1; Doc. 48 at 4; Doc. 49 at 5.) CAIC paid the $750,000 to the Baez family and Insurance Company of the West in exchange for dismissals and

releases of liability.  (Doc. 33 at 3; Doc. 24 at 4; Doc. 37 at 4; Doc. 42 at 1; Doc. 48 at 4; Doc. 49 at 5.)  As such, CAIC now has a right of reimbursement in the amount of $750,000 against Garnicas. (*Id*.)

**H.   The Present Litigation**

On June 28, 2021, Plaintiffs initiated this diversity action against CAIC, alleging that CAIC engaged in breach of contract and breach of the implied covenant of good faith and fair dealing by denying coverage under the Policy and refusing tender of defense of the wrongful death and workers' compensation suits.  (Doc. 1.)  Plaintiffs also alleged claims for false advertising and deceptive business practices against CAIC concerning the Policy terms.  (*Id*.)

CAIC filed a counterclaim against Plaintiffs on July 23, 2021, seeking a declaratory judgment that, among other things, CAIC is entitled to reimbursement of the $750,000 surety obligation it paid under the MCS-90 to the Baez family and Insurance Company of the West to settle the wrongful death and workers' compensation suits.  (Doc. 5.)

By stipulation of the parties, Plaintiffs filed the amended complaint, the operative pleading, on February 24, 2023 (the "FAC").  (*See* Docs. 28, 34, & 35.)  The amended complaint asserts only a single breach of contract claim.  (*See* Doc. 35.)

## II.   CONCLUSIONS OF LAW

The parties have agreed that if the Court determines there is no coverage for the loss under the Policy, there are "no additional disputes" with respect to the application of the MCS-90 and CAIC's right of reimbursement against Garnicas of the $750,000 it paid to settle the wrongful death and workers' compensation lawsuits.  (Doc. 30 at 2.  *See also* Doc. 42 at 4; Doc. 47 at 10:3–5.) Thus, the sole issue before the Court is whether coverage for the accident exists under the Policy.

**A.   Radius of Operation of Limitation**

It is undisputed that there was no coverage for the accident pursuant to the "Limited Radius of Operation Endorsement" to the Policy.  (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 3.)  Plaintiffs nevertheless contend that they are entitled to judgment because

the limitation is unconscionable.[2] (*See* Doc. 42 at 3, 4; Doc. 47 at 9:17–10:2; *id*. at 151:18–154:1; Doc. 49 at 9.)

If a contract or clause is unconscionable, it is unenforceable. *Gatton v. T–Mobile USA, Inc*., 152 Cal. App. 4th 571, 579 (2007). *See also* Cal. Civ. Code § 1670.5 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."). "[U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *A & M Produce Co. v. FMC Corp*., 135 Cal. App. 3d 473, 486 (Cal. Ct. App. 1982) (internal alterations omitted) (citing *Williams v. Walker-Thomas Furniture Co*., 350 F.2d 445, 449 (D.C. Cir. 1965)).

Unconscionability has both a procedural and a substantive element. *Id*. *See also Ofir v. Transamerica Premier Life Ins. Co*., No. 17-CV-1544-MMA (JMA), 2017 WL 6059162, at *7 (S.D. Cal. Dec. 6, 2017); *Ellison Framing, Inc. v. Zurich Am. Ins. Co.*, 805 F. Supp. 2d 1006, 1010–11 (E.D. Cal. 2011) ("In California, the prevailing view is that both procedural and substantive unconscionability must be present in order for the court to invalidate a contract.") (citing *Armendariz v. Found. Health Psychcare Serv. Inc*., 24 Cal. 4th 83, 114 (2000)). The procedural element focuses on oppression and surprise due to unequal bargaining power, and the substantive element focuses on the fairness of the terms of the agreement and whether they are overly harsh or one-sided. *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 246 (Cal. 2012). *See also American Software, Inc. v. Ali*, 46 Cal.App.4th 1386, 1390–1391 (1996) (To

---

[2] CAIC asserts that Plaintiffs waived its defense of unconscionability by not raising it until their trial brief filed on April 12, 2023. (*See* Doc. 48 at 13.) While unenforceability of a contract or contract provision is an affirmative defense that must be pleaded at the first opportunity, *see U.S. Sec. Holdings, Inc. v. Andrews*, No. CV-212263-DSF-MRW(x), 2021 WL 6882436, at *6 (C.D. Cal. Dec. 24, 2021), the Court declines to find waiver in this case. CAIC has not shown it has been prejudiced from Plaintiffs' belated assertion; rather, CAIC was able to, and did, present argument, testimony, and evidence at trial directed to that defense. *See, e.g., Magana v. N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). *See also hiQ Labs, Inc. v. LinkedIn Corp*., No. 17-cv-03301-EMC, 2022 WL 18399982, at *9 (N.D. Cal. Nov. 4, 2022 ("LinkedIn has not shown prejudice from hiQ's belated assertion of unconscionability, so hiQ has not waived this affirmative defense.") (citing *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993)). *See also Mir v. Levine*, 745 F. App'x 726, 727 (9th Cir. 2018) (absent showing of prejudice, no waiver of defendants' collateral estoppel defense even though it was not raised until summary judgment).

establish that a term of an insurance policy is unconscionable, the insured must prove: (1) the term resulted from the insurer's disparate bargaining power and the insured's surprise, and (2) the term is so one-sided as to "shock the conscience."). "The elements of procedural and substantive unconscionability need not be present to the same degree because they are evaluated on a sliding scale. Consequently, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude the term is unenforceable, and vice versa." *Grand Prospects Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347 (Cal. Ct. App. 2015) (citing *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (Cal. 2013)) (internal citation omitted).

### 1. Procedural Unconscionability

The procedural element of unconscionability focuses on two factors: oppression and surprise. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1187 (S.D. Cal. 2005); *A & M Produce Co.*, 135 Cal. App. 3d 473, 486 (1982).

#### *a. Oppression*

The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party. *McVicar v. Goodman Glob. Inc.*, No. SACV 13-1223-DOC (RNBx), 2014 WL 12573992, at *13 (C.D. Cal. Nov. 13, 2014) (citing *California Grocers Assn. v. Bank of America*, 22 Cal. App. 4th 205, 214 (1994)). Terms of agreements that are "actively negotiated" by the parties are not unconscionable. *See, e.g., Ellison Framing, Inc.*, 805 F. Supp. 2d at 1011.

Plaintiffs have failed to carry their burden of proving that their purchase of the Policy involved no meaningful choice and a lack of negotiation. Gamero hired a third-party broker, Morris Seguros, and specifically its employee Claudia Ponce, to assist him in procuring commercial automotive insurance for Garnicas' fleet of trucks. (Doc. 47 at 26:17–27:23, 57:24–58:4; 58:5–7; 124:15–17.) Neither Morris Seguros nor its employee Claudia Ponce is an employee of CAIC. (*Id.* at 108:14–15; 108:16–19.) Ms. Ponce does not receive any financial incentive to steer business to CAIC. (*Id.* at 108:20–22.) She is an "independent broker" who represents many insurance companies. (*Id.* at 108:20–22; 123:25–124:4; 125:3–7.) There are other insurers that operate in the

"niche market" in which CAIC operates, specifically insuring cross-border operations. (*Id*. at 100:15–101:13.) Plaintiffs presumably had their choice among them, and elected to proceed with CAIC. *See Traynor v. Lexington Ins. Co*., No. 2:09-cv-02990-FMC-SSx, 2009 WL 10675394, at *2 (C.D. Cal. June 8, 2009) (finding "no unequal bargaining power and no absence of meaningful choice" where "the [p]laintiffs had their choice of insurance companies"). *See also NS Holdings LLC Inc. v. Am. Int'l Grp. Inc.*, No. SACV 10-1132 DOC (JEMx), 2010 WL 4718895, at *4 (C.D. Cal. Nov. 15, 2010) ("[T]here can be no oppression establishing procedural unconscionability, ***even assuming unequal bargaining power and an adhesion contract***, when the customer has meaningful choices.") (quoting *Wayne v. Staples, Inc*., 135 Cal.App.4th 466, 482 (2006) (emphasis added).

The "Radius of Operation" limitation also was not a "standardized" term such that Plaintiffs had no choice but to "adhere to [it[ or reject it." *Cf. Armendariz*, 24 Cal. 4th at 113 (citing *Neal v. State Farm Ins. Cos*., 188 Cal. App. 2d 690, 694 (Cal. Ct. App. 1961)). Gamero understood he had to select a radius of operation mileage for each truck in Garnicas' fleet he wished to insure. (Doc. 47 at 72:25–76.2.) He also understood that there would be a difference in price of the insurance depending on the radius selected. (*Id*. at 63:11–17.) After an email exchange with Ms. Ponce, Gamero explicitly selected a radius of 0–250 miles for the subject truck. (Doc. 33 at 2; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 2. *See also* Ex. J-1 at 1.) He also had the right to change the radius of operation mileage "from day to day" if he wished. (Doc. 47 at 107:21–108:4.)

    b. *Surprise*

"Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." *Crippen v. Cent. Valley RV Outlet, Inc*., 124 Cal. App. 4th 1159, 1165 (2004) (citations omitted). "Unfair surprise results from misleading bargaining conduct or other circumstances indicating that [a] party's consent was not an informed choice." *Denton v. WorleyParsons Grp., Inc*., No. CV 14-9573 PSG (MRWx), 2015 WL 12746222, at *6 (C.D. Cal. Mar. 17, 2015) (quoting *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 983 (2010)).

Plaintiffs do not claim that the "Radius of Operation" limitation was hidden or buried in a prolix form. Nor could they. In addition to its inclusion on the declarations page of the Policy (see

Ex. J-1 at 1), the limitation is clearly identified on its own page of the Policy and is set forth under the heading "LIMITED RADIUS OF OPERATION ENDORSEMENT" in large, bold, blue typeface. (Ex. J-1 at 15; Doc. 47 at 104:6–105:3.) The purpose of the heading was to make the "Radius of Operation" limitation "open and obvious" within the Policy. (Doc. 47 at 104:20–105:11.) Courts have held that exclusions in insurance policies that are "conspicuous and unambiguous" are not "surprising" to an insured. *See, e.g., Lynch v. Com. Union Ins. Co.*, No. A094846, 2001 WL 1660035, at \*6 (Cal. Ct. App. Dec. 28, 2001).

Plaintiffs also fail to establish any "misleading bargaining conduct" by CAIC. Gamero admits that he had a "misunderstanding": he mistakenly believed that the subject truck, as a "backup" or "extra" truck, could step into the shoes of the coverage of an out-of-service truck that it replaces on the road. ( Doc. 47 at 45:22–46:3; 52:6–13; 70:12–15.) But this misunderstanding, and any "unfair surprise" arising therefrom, was not due to any act or omission by CAIC. Rather, it developed as a result of Gamero's experience working with a prior trucking company. (*Id*. at 51:15–21.) CAIC never informed Gamero that he was required to insure an extra truck; instead, it was a "business decision" to make sure he "had an extra truck on hand in case" he needed it.[3] (*Id*. at 51:22–52:5.) Gamero testified that he understood that the "250" referred to miles for the "Radius of Operation" for that truck, and that the truck was only going to be insured for the radius selected. (*Id*. at 69:7–10; 70:22–24.) He also understood that depending on how many miles selected, it would affect the price of the truck's insurance. (*Id*. at 63:18–22.)

In light of the foregoing, the Court finds that Plaintiffs have not shown that the "Radius of Operation" limitation is procedurally unconscionable.

2.      Substantive Unconscionability

Although it need not consider the question in the absence of procedural unconscionability, *Ellison Framing*, 805 F. Supp. 2d at 1010–11, the Court finds that Plaintiffs also have not demonstrated that the Radius of Operation" limitation is substantively unconscionable. Contracts

---

[3] Gamero also did not inform independent broker Ms. Ponce that he needed enough coverage on the "backup" truck so that if it replaced another truck with a 1,000-mile radius of operation, the backup truck would be covered. (Doc. 47 at 46:9–15; 47:10–21.) Even if he had, there would be no liability by CAIC because Ms. Ponce, as an independent broker, was not CAIC's agent. *See Clarendon Nat. Ins. Co. v. Ins. Co. of the* W., 442 F. Supp. 2d 914, 936 (E.D. Cal. 2006). *See also* Cal. Ins. Code § 33.

or provisions of contracts found to be substantively unconscionable are often described as "unduly oppressive," "so one-sided as to shock the conscience," and "unreasonably favorable to the more powerful party." *Grand Prospects Partners,* 232 Cal. App. 4th at 1347 (citing *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th at 1145).

Here, there is nothing about the limitation that approaches the "high standard" of substantive unconscionability. *Perth v. Davis*, No. CV 08-03115 CRB, 2009 WL 4908087, at *3 (N.D. Cal. Dec. 14, 2009) (citing *Wayne*, 135 Cal. App. 4th at 480–81). Gamero knowingly made a choice to select a radius of operation for each of Garnicas' trucks based on the distances within the United States they would travel. (Doc. 47 at 72:25–76.2.) He could have chosen a radius as small as 50 miles across the border or as large as the entire contiguous United States. (*Id*. at 107:10–17.) He also could have changed the radius "from day to day" if he wished. (*Id*. at 107:21–108:4.) By its terms, the limitation does not "unreasonably favor" CAIC.

Plaintiffs contend that the application of the "Radius of Operation" limitation in this case is "shocking to the conscience" and "overly harsh and one-sided" because "[b]y saving less than $200, Gamero opened himself up to a potential liability of $750,000." (Doc. 49 at 9–10. *See also* Doc. 47 at 153:8–154:1; Doc. 42 at 2–3.) This argument, however, is not supported by the evidence presented at trial. There is no evidence that the additional $164.15 premium Plaintiffs paid for liability coverage when they amended the Policy following the accident was attributable solely to the increase in the range of operation mileage to 1,000 miles. To the contrary, CAIC's Director of Claims testified that the radius of operation mileage is "one of many factors" that is considered when calculating the cost of liability coverage. (Doc. 47 at 148:2–10.)

Moreover, the evidence presented at trial, as discussed above, shows that Gamero had a "misunderstanding" about whether the subject truck, as a "backup" or "extra" truck, could step into the shoes of the coverage of another. (Doc. 47 at 45:22–46:3; 52:6–13; 70:12–15.) It is this misunderstanding formed by Gamero alone, without involvement by CAIC, that led to any alleged "shocking" or "harsh" result. *See Golden Gate Way, LLC v. Enercon Servs., Inc*., 572 F. Supp. 3d 797, 816 (N.D. Cal. 2021) ("A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain.") (quoting *Sanchez v. Valencia Holding Co*.,

14

61 Cal.4th 899, 911 (2015)).

**B.     U.S. Registration Exclusion**

Even if the Court were to find the "Radius of Operation" limitation unconscionable, and therefore unenforceable, coverage for the accident would still be excluded under the Policy. It is undisputed that the Policy excludes "Any auto registered or principally garaged in the United States of America or Canada." (Doc. 33 at 3; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 2; Doc. 49 at 3. *See also* Ex. J-1 at 23.) It is also undisputed that the subject truck was registered in the United States. (Doc. 37 at 2; Doc. 42 at 1; Doc. 47 at 64:25–66:2; 80:6–8; 121:5–14. *See also* Ex. J-7.) Thus, this exclusion excludes coverage for the accident under the Policy. (Doc. 33 at 3; Doc. 24 at 3; Doc. 37 at 2; Doc. 42 at 1; Doc. 48 at 3; Doc. 49 at 3.)

Plaintiffs do not contend that the U.S. Registration exclusion is unconscionable. Neither their trial brief nor their proposed findings of fact and conclusions of law make any argument as to the enforceability of the exclusion. To the extent Plaintiffs suggest that CAIC's failure to specify this exclusion in its reservation of rights and/or denial of coverage correspondence operates as an automatic waiver of that exclusion under California law (*see* Doc. 49 at 8–9), the California Supreme Court has expressly rejected that argument. *See Etchell v. Royal Ins. Co.*, 165 F.R.D. 523, 565 (N.D. Cal. 1996) (quoting *Waller v. Truck Ins. Exchange*, 11 Cal. 4th 1, 31, 33 (1995) (holding that a carrier does not waive its ability to invoke substantive policy provisions simply because it does not mention them when it denies coverage—even if it should have known or in fact knew about their pertinence at the time of the denial).)

Rather, "an insurer waives defenses to coverage not asserted in its denial only if the insured can show misconduct by the insurer or detrimental reliance by the insured." *Waller*, 11 Cal. 4th at 33 (discussing *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991). *See also California Dairies, Inc. v. RSUI Indem. Co.*, No. 1:08-cv-00790, 2010 WL 2598376, at *11 (E.D. Cal. June 25, 2010). The burden "is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation[;] . . . doubtful cases will be decided against a waiver." *Dietz Int'l Pub. Adjusters of California, Inc. v. Evanston Ins. Co.*, 796 F. Supp. 2d 1197, 1209 (C.D. Cal. 2011) (quoting *Waller*, 11 Cal.4th at 31 (internal quotations

15

omitted)).

Plaintiffs have not met their burden of showing waiver of the U.S. Registration exclusion. There is no evidence, much less clear and convincing evidence, that CAIC engaged in any misconduct or acted in a manner "inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *California Dairies,* 2010 WL 2598376, at *11. To the contrary, both CAIC's reservation of rights and denial of coverage correspondence explicitly state that "the above cited policy language is not intended to be all inclusive," that CAIC "reserve[s] the right to assert any other policy defenses which may now exist or which may come into existence at a later time," and that CAIC's "failure to raise any existing policy defenses at this time, if any, may not be considered a waiver of any of those rights." (Ex. J-8 at 6, 15. *See also* Doc. 47 at 115:19–116:16.)

In light of the foregoing, the Court finds that CAIC has not waived the U.S. Registration exclusion, and that it serves as an independent basis to exclude coverage under the Policy for the accident.[4]

### III.     CONCLUSION AND ORDER

Pursuant to the above findings of fact and conclusions of law, the Court determines that the Policy is enforceable and does not cover the loss at issue. Judgment will be entered in favor of CAIC on both Plaintiff's breach of contract claim and CAIC's counterclaim in the amount of $750,000, as reimbursement for the surety bond payment under the MCS-90. This order constitutes the findings and conclusions required by Rule 52(a) of the Federal Rules of Civil Procedure.

---

[4] Plaintiffs also suggest, in their proposed findings of fact, that the U.S. Registration exclusion "mak[es] coverage under the Policy illusory." (Doc. 49 at 9.) They offer no argument to support this suggestion, however. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim. . . ."); *Hibbs v. Dept. of Hum. Resources,* 273 F.3d 844, 873 n.34 (9th Cir. 2001) (deeming a one-sentence argument "too undeveloped to be capable of assessment."). Lack of argument aside, the Court finds that the exclusion is not illusory because its application does not result in a "complete lack of any policy coverage," as there exists a "possibility of coverage" for vehicles that are neither registered nor principally garaged in the U.S. or Canada. *See French Laundry Partners, LP v. Hartford Fire Ins. Co.*, 535 F. Supp. 3d 897, 904 (N.D. Cal. 2021) (An insurance policy provision is only illusory where it results in a "complete lack of any policy coverage.") (quoting *Secard Pools, Inc. v. Kinsale Ins. Co.*, 318 F. Supp. 3d 1147, 1153 (C.D. Cal. 2017)); *Secard Pools*, 318 F. Supp. 3d at 1153 ("[T]he mere possibility of some coverage is enough" to defeat an allegation that an insurance policy is illusory.). *See also Fagundes v. American International Adjustment Co.*, 2 Cal. App. 4th 1310 (1990) (fact that plaintiff had "apparently chosen a sub-optimal plan did not render the plan's coverage illusory").

In accordance with Federal Rule of Civil Procedure 58(b), the Clerk of Court is directed to enter judgment in favor of Defendant/Counterclaimant Commercial Alliance Insurance Company, and against Plaintiffs-Counter-defendants Garnicas Transport, LLC and Samuel Gamero, in the amount of $750,000. The Clerk of Court is also directed to close this case.

IT IS SO ORDERED.

Dated:   **August 15, 2023**                           /s/ *Sheila K. Oberto*
                                                           UNITED STATES MAGISTRATE JUDGE

17